**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

JANUS DISTRIBUTORS LLC,

     Petitioner,

v.

DANIEL LAWRENCE ROBERTS,

     Respondent.

---

## PETITION TO VACATE ARBITRATION AWARD

Petitioner Janus Distributors LLC, through its attorneys, brings this Petition against Respondent Daniel Lawrence Roberts to vacate an improper arbitration award entered in *Daniel Lawrence Roberts v. Janus Distributors LLC*, FINRA Case No. 15-01565 (Aug. 5, 2016), pursuant to the Federal Arbitration Act. In support hereof, Petitioner alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. § 78a *et seq*., and Section 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a).

2.    This Court has jurisdiction over Petitioner Janus Distributors LLC ("Janus" or "Petitioner" or the "Company") and Respondent Daniel Lawrence Roberts ("Roberts" or "Respondent") because they are citizens and residents of the State of Colorado.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because both Janus and Roberts reside in the District of Colorado and engaged in arbitration in Denver, Colorado.

## PARTIES

4.    Janus is organized under the laws of Delaware, and its principal place of business is in Denver, Colorado.

5.    Janus is a provider of wealth management, securities trading and sales, and investment banking services.

6.    Janus is a member of the Financial Industry Regulatory Authority ("FINRA") and is required to comply with FINRA regulations, both with respect to customers and its employees.

7.    Roberts is a former employee of Janus and resides in Denver, Colorado.

## INTRODUCTION

8.    When a registered representative leaves a FINRA member firm for any reason, within 30 days, the firm must file a Form U5 identifying the circumstances of the separation of employment.  The information in the Form U5 is then available to other prospective employers and members of the public seeking information on a registered representative.

9.    In November 2014, Janus permitted Roberts to resign following an investigation into the matter of his reporting and charging what he represented to be business expenses on a Janus credit card; however, the expenses were in fact personal expenses.

10.    Roberts had claimed personal expenses in an amount less than $150 as business expenses.

11.     Because Roberts charged his personal expenses on the Janus credit card, he was accused, and was under internal review, by Janus of wrongful taking of property.

12.     When confronted with the records showing Roberts had claimed personal expenses as business expenses, Roberts admitted to Janus that the expenses in question were not business expenses but were personal in nature.

13.     Because he claimed personal expenses as business expenses, Janus determined it would terminate Roberts' employment.

14.     Roberts tendered his resignation.

15.     In compliance with FINRA's requirements, Janus reported Roberts' termination on the Form U5.  *See* Exhibit A.

16.     Roberts brought claims in arbitration against Janus under FINRA's Code of Arbitration Procedure for Industry Disputes alleging that Janus's statements on, and affirmative answers to questions posed in, his Form U5 gave rise to claims for (1) expungement, because they were defamatory in nature; and (2) defamation.

17.     After a five-day arbitration hearing, an arbitration panel (the "Panel") entered an Arbitration Award (the "Award") on August 5, 2016, ordering expungement based upon a finding that the statements made by Janus in completing the form were defamatory in nature. *See* Exhibit B.

18.     The Award also provided for monetary and punitive damages in an amount of over $550,000.  The Award, however, does not identify the claim, cause of action, or basis for such an award.  The Award contains no findings and no analysis of a state law defamation claim, which is the only claim made by Roberts that provides for recovery of damages.

19.     This Court must vacate the Award because it was issued in manifest disregard of the law, and because, in issuing the Award, the Panel exceeded its powers and engaged in misbehavior.   In the context of FINRA arbitration of employee disputes, expungement of information on a Form U5 – a "claim" or remedy that is solely a FINRA-created concept – is permitted if the information is defamatory in nature, misleading, inaccurate, or erroneous.   A request for expungement may be granted based on a finding that the statement is defamatory in nature without regard to the truth of the statement.   An expungement request that is granted based upon a defamatory in nature finding, however, is not a claim giving rise to potential monetary or punitive damages.   Indeed, Roberts did not seek monetary or punitive damages based on a claim that Janus's statements were defamatory in nature.

20.     To reach the issue of damages, the Panel was first required to find that Janus engaged in defamation, as that cause of action is set forth under state law.   Had it considered a defamation claim, the Panel would have to have considered the truth of the statements in Roberts' Form U5 and Janus's qualified privilege in making such statements.   There is no evidence that the statements in the Form U5 are false; indeed, there is no dispute that the statements in the Form U5 are true.   Nonetheless, with only a finding of "defamatory in nature," and thus with no claim, cause of action, or basis whatsoever, the Panel awarded damages.   In short, the Panel exceeded its powers and engaged in misbehavior and acted in manifest disregard of the law either by (1) awarding damages under the FINRA-created concept of "defamatory in nature," which remedial scheme operates only to provide for expungement but provides for no damages, or (2) by its willful inattentiveness to the requirements of the state law claim of defamation, which could not stand in this case because (1) Roberts concedes the truth of the

4

statement made in Section 3 of the Form U5; (2) there is no dispute that although it had determined it would terminate Roberts, Janus permitted him to resign and recorded the separation as such on the Form U5; and (3) Janus had accused Roberts of wrongfully taking property by his credit card charges and expense reporting, and that such accusations had resulted in Janus undertaking a review into Roberts' conduct, making the Section 7 answers to FINRA-posed questions, true.   While the Panel declined to issue an explained decision, conveniently rendering it impossible to determine which theory the panel invoked to issue the Award, each of these fantastic theories render the Award subject to vacatur.

21.     This Court must vacate the Award because the Panel exceeded its powers and engaged in misbehavior insofar as the Panel announced there was willful and wanton conduct.

22.     This Court must vacate the Award because it is contrary to public policy, and in acting in derogation of public policy, the Panel exceeded its powers and engaged in misconduct. FINRA has a clear public policy regarding the reporting of a registered representative's separation of employment, which public policy is set forth in various authorities and reflected in FINRA's Form U5.  Members of FINRA are required to complete Form U5s and may be subject to civil or administrative penalties for failing to report accurate or complete information or misleading FINRA regarding an employee's separation of employment.  Disclosure of truthful information on the Form U5 is important to the integrity of the securities industry's public disclosure system and FINRA's and other regulatory authorities' investigatory efforts.  FINRA, not Janus, has decided that the information required to be completed in the Form U5 is important to disclose in order to protect the public at large with respect to registered representatives' employment circumstances.  Because Janus's statements in Roberts' Form U5 are true, complete,

accurate, and in response to FINRA's mandated reporting requirements, imposing liability against Janus for its compliance is contrary to public policy.

23.     The Award should also be vacated under Section 10(a)(2) of the FAA because there was misbehavior on the part of Arbitrator Brown that prejudiced the rights of Janus. Arbitrators must be impartial and neutral throughout a proceeding in both appearance and fact. On the fourth day of the hearing, Arbitrator Brown stated, on behalf of the Panel, that the Panel believed that Janus had "distorted" Roberts' Form U5.  Arbitrator Brown argued that the amount of money that Roberts had claimed as a business expense was so small that Janus should have ignored his malfeasance and, in declining to ignore the malfeasance, Janus had not correctly completed Roberts' Form U5.  Arbitrator Brown articulated her view, representing it as the view of the Panel, that Janus should have parsed the requirements of Form U5 reporting such that Roberts' malfeasance was never made known to the public.  Accordingly, Janus moved to have Arbitrator Brown recused for her misbehavior because, among other things, in the middle of Janus's case in chief, Arbitrator Brown stated that the Panel had already prejudged the case and concluded that Janus had damaged Roberts.  In any event, Janus proceeded to call three more witnesses and demonstrated conclusively that Janus had not defamed Roberts and that Janus was *required* to report the circumstances underlying Roberts' resignation to FINRA.  That Arbitrator Brown represented to the parties that the Panel had already decided the merits in the middle of the hearing was misbehavior which quite literally prejudiced Janus and robbed the proceedings of due process.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

*Applicable Regulations*

24.     FINRA is a self-regulatory organization that is authorized to effect certain rules, policies, and procedures in furtherance of the protections and purposes of the Securities and Exchange Commission.

25.     Form U5s are required by FINRA's bylaws and are a means by which FINRA populates the database that forms the Central Registration Depository, which is available to the public.

26.     FINRA Regulatory Notice 10-39 ("Notice 10-39") provides guidance for member firms of their obligation to provide complete and accurate information on the Form U5 when an employee separates his or her employment (and terminates his or her registration).

27.     Janus is a member of FINRA and must comply with the rules in Notice 10-39 when completing Form U5s.

28.     Section 3 of the Form U5 requires member firms to indicate whether the reason for termination of registration (separation of employment) was voluntarily resigned, permitted to resign, or discharged, among others.

29.     If the reason for termination of registration is "permitted to resign" or "discharged," the firm is required to explain and "provide sufficient detail … such that a reasonable person may understand the circumstances that triggered the affirmative response." Notice 10-39.

30.     The Form U5 also requires member firms to complete Section 7, responding either in the affirmative or in the negative to the questions set forth by FINRA, as follows:

a. Internal Review Disclosure – Question 7B: "Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct?"

b. Termination Disclosure – Question 7F: "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of … fraud or the wrongful taking of property?"

31.     These questions in Section 7 of the Form U5 do not ask member firms whether an employee was *actually* convicted of fraud or wrongful taking of property, or whether there was even any conclusion reached following the review, but merely whether the employee was under internal review or subject to allegations of such.

32.     A firm is not at liberty to "parse through questions in a manner that would allow [it] to avoid responding affirmatively to a question."  Notice 10-39.

33.     With respect to Section 7 of the Form U5, FINRA instructs covered firms, such as Janus, to construe the term "investment-related" expansively and specifies that the term is not limited to securities.  Notice 10-39.

34.     FINRA does not set a threshold materiality of infraction or dollar amount to trigger a firm's reporting obligation as to whether an employee was under investigation for, or accused of, wrongful taking of property.

35.     Members of FINRA may be subject to civil or administrative penalties for failing to report accurate or complete information or misleading FINRA regarding an employee's separation of employment.

***Roberts' Purported Business Expenses***

36.     Janus employed Roberts as an internal sales consultant working in Denver, Colorado, and serving the Colorado territory from November 12, 2012, through November 14, 2014.

37.     Roberts was an at will employee of Janus and, thus, could be terminated at any time, for any reason.

38.     Employees of Janus are authorized to use Janus's credit card when entertaining clients and when the expenditures have a clear business purpose.

39.     On October 11, 2014, Roberts attended a Denver Avalanche hockey game with a client and the client's wife.

40.     Before Roberts was to meet the client, Roberts purchased a beer at a restaurant known as Brooklyn's using his Janus credit card.

41.     After the hockey game, Roberts returned to Brooklyn's and bought several more beers, which he purchased on his Janus credit card.

42.     No client was present and there was no business purpose for Roberts' purchases before and after the hockey game.

43.     Roberts' purchases before and after the hockey game were not covered by Janus's per diem allowance because Roberts was not a travelling employee nor on company business.

44.     On November 11, 2014, Roberts submitted an expense report for four purchases that he made before, during, and after the hockey game.

45.     The expense report included Roberts' purchase before the game when no client was present, concessions for the client and himself during the hockey game, and a $131 purchase at Brooklyn's occurring after midnight of October 11, 2014.

46.     In reporting his expenses, Roberts submitted to Janus that all the purchases, including the purchases before and after the hockey game, were for a business purpose and were not personal expenses.

47.     Roberts became the subject of an internal review into the matter of his expense report of November 11, 2014.

48.     Janus confirmed with the client that the client was not present for the purchases made by Roberts before or after the hockey game.

49.     Janus confronted Roberts about his expense reporting because it had reason to believe that the client was not in attendance at the events before and after the game, and, therefore, the expenses were not business related.

50.     Roberts admitted that he had submitted the expense report and had claimed business expenses that were actually personal expenses, though he claimed that he had done so in error.

51.     When confronted with the allegation that Janus knew the client was not present for Roberts' purported business expenses, Roberts stated, "you got me."

52.     Roberts admitted that the expenses should not have been attributed to Janus as business expenses.

53.     Janus permitted Roberts to resign on November 14, 2014, instead of terminating him as it had planned.

***Roberts' Form U5***

54.     Following his resignation, Roberts hired an attorney, Jeffrey R. Thomas ("Thomas"), who sought to and did negotiate with Janus regarding the language on Roberts' Form U5.

55.     Thomas requested of Janus's in-house counsel that Janus confirm that it would state that Roberts was permitted to resign and not discharged.   Janus gave Thomas such confirmation.

56.     Thomas requested, and Janus consented, to specify that the amount improperly claimed as a business expense was "less than $150."

57.     Thomas requested, and Janus consented, to remove any reference to industry standards from Roberts' Form U5.

58.     In accordance with Thomas's request and Janus's agreement thereto, Janus reported on Roberts' Form U5 that Roberts was permitted to resign and explained, "Violation of Company policy – representative claimed a personal expense in an amount less than $150 as a business expense."

59.     Roberts testified at arbitration that he had indeed claimed a personal expense in an amount less than $150 as a business expense, and he further testified that he had done so by mistake.

60.     In addition to conferring with Thomas about Roberts' Form U5 reporting, members of Janus's Compliance Department and Legal Department conferred with one another regarding Janus's obligations in reporting Roberts' Form U5.

61.     Janus's in-house counsel, Heidi Hardin, conferred with outside counsel regarding Janus's obligations in reporting Roberts' Form U5, specifically in the responses to Section 7.

62.     Janus's outside counsel was Elliott Curzon ("Curzon"), a partner at the law firm of Dechert LLP in Washington, D.C.  Curzon specializes in advising financial services firms regarding mutual funds and securities.  Curzon previously worked for FINRA and its predecessor for 12 years.  One of Curzon's responsibilities while working at FINRA and its predecessor was to interpret Form U5 reporting requirements.

63.     Following consultation with Curzon and in accordance with his counsel, Janus answered affirmatively to the following questions on Roberts' Form U5:

a.  Internal Review Disclosure – Question 7B: "Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct?"

b.  Termination Disclosure – Question 7F: "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of … fraud or the wrongful taking of property?"

64.     At the time of termination of registration, Roberts was under internal review for wrongful taking of property.

65.     Roberts resigned after allegations were made that accused Roberts of wrongful taking of property.

*Arbitration*

66.     Roberts filed a Statement of Claim on June 24, 2015, and an Amended Statement of Claim on November 24, 2015.

67.     Roberts sought expungement of statements from his Form U5 that were "defamatory in nature" and monetary and punitive damages for defamation.

68.     Janus answered the Statement of Claim on September 8, 2015, and the Amended Statement of Claim on January 6, 2016.

69.     Janus denied that it had made statements that were defamatory in nature or defamatory and denied that Roberts was entitled to any relief.

70.     The parties submitted to FINRA arbitration before a panel of arbitrators, which included Elaine Brown, Kathy Eisenmenger, and Steve Miller.

71.     A five-day hearing was held on March 28 through April 1, 2016, in Denver Colorado.

72.     The parties stipulated that the stenographic record would be the official record of the proceeding.

73.     On the fourth day of the hearing, Janus moved to recuse Arbitrator Brown from the Panel because of statements that she made to witnesses about the merits of the case.

74.     Arbitrator Brown had asked Curzon, who was called by Janus to testify in the proceedings, whether FINRA had a minimum dollar amount that would trigger a member firm's reporting requirements or whether, given the sum of money spent by Roberts personally but

claimed as business expenses, there was even an event in this matter "worthy" of reporting on a Form U5, and she implied that Janus should have allowed Roberts to simply re-pay Janus for the amount that Roberts had claimed as a business expense.

75.     Arbitrator Brown stated, "We're just trying to figure out why [Roberts' Form] U5 has been distorted."

76.     Arbitrator Brown continued to debate with the witness: "Well, if you look at [Roberts' Form] U5 again, he's got information down here that's check[ed] off as fraud, you know, falsifying information.  It's very damaging, don't you think, to a broker who's trying to move on?"

77.     Arbitrator Brown further stated, "Well, in Mr. Roberts' situation, the evidence on his U5 is not as correct as we feel it should be.  There are other instances where Janus [h]as filled out U5s that are totally incorrect and for things that are not right that the employee's done."

78.     Janus's counsel objected to Arbitrator Brown's statements and then moved to recuse Arbitrator Brown.

79.     Arbitrator Brown, the sole party authorized to determine Janus's motion, denied the motion, which was supported by the Panel as a whole.

80.     The Panel unanimously granted Janus's motion for the parties to submit post-hearing briefs, however, the Panel denied Janus's motion for the Panel to issue an explained decision, and, though it was permitted to if it so chose, the Panel did not of its own volition issue an explained decision.

81.     Rule 2080 provides the basis for obtaining an order of expungement of information from a registered representative's Form U5 and from the Central Registration Depository.  Those bases include the following:

a.    The claim, allegation, or information is factually impossible or clearly erroneous.

b.    The registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds.

c.    The claim, allegation, or information is false.

82.     Under Rule 13805 of the FINRA Code of Arbitration Procedure for Industry Disputes, the Panel *must* "[i]ndicate in the arbitration award which of the Rule 2080 grounds for expungement serve(s) as the basis for its expungement order and provide a brief written explanation of the reason(s) for its finding that one or more Rule 2080 grounds for expungement applies to the facts of the case."

83.     FINRA's rules direct that arbitrators recommending expungement should ensure that the explanation is complete and is not solely a recitation of one of the Rule 2080 grounds or language provided in the expungement request.  Specifically, arbitrators should identify in the award the reason for and any specific documentary or other evidence relied on in recommending expungement.

84.     Pursuant to NASD Notice 99-54, an arbitrator may recommend expungement where the arbitrator determines that the Form U5 reported information is "defamatory in nature." Defamatory in nature is a creation of the Notice and distinct from a defamation claim insofar as it does not require a finding regarding the truth or falsity of the statements.

85.     The Award states no facts or basis underlying the circumstances of Roberts' separation of employment or the filing of his Form U5.

86.     The Award states no facts or basis for expungement or an award of monetary or punitive damages.

## JURISDICTIONAL BASIS AND
## GROUNDS FOR VACATUR OF THE ARBITRATION AWARD

*The Arbitration Arose Under FINRA's Disclosure Requirements Which are Overseen and Controlled by the SEC*

87.     The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, provides a comprehensive system of federal regulation of the securities industry.  As an officially registered national securities association under the Securities Exchange Act of 1934, FINRA must comply with the Securities and Exchange Commission's regulations issued pursuant thereto, enforce compliance by its members, and maintain registration and disciplinary data of its members and their brokers and dealers and associated persons.  *See* 15 U.S.C. § 78o-3(i).  FINRA's rules, including its disclosure requirements contained in the Form U5 and the Code of Arbitration Procedure for Industry Disputes, are subject to the Securities and Exchange Commission's oversight and control.  *See* 15 U.S.C. § 78s-b.  This case arises from an arbitration in which Roberts challenged Janus's compliance with FINRA's disclosure requirements contained in the Form U5.  Accordingly, this Court has jurisdiction pursuant to the Securities and Exchange Act of 1934 and the FAA.  *See, e.g.*, *Hosier v. Citigroup Global Mkts., Inc.*, 835 F. Supp. 2d 1098, 1108 (D. Colo. 2011) (confirming FINRA arbitration award pursuant to the FAA); *see also Gilmore v. Brandt*, Case No. 11-CV-151, 2011 U.S. Dist. LEXIS 125812, *17-18 (D. Colo. Oct. 28, 2011) (confirming FINRA arbitration award pursuant to the FAA).

***The Panel Exceeded Its Powers, Engaged in Misbehavior, and Acted in Manifest Disregard of the Law***

88.     This Court must vacate the Award because it manifestly disregards the law.  The Tenth Circuit has recognized that, under the FAA, a court may vacate an arbitration award where the arbitration award is in manifest disregard of the law.  *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001).  A finding of manifest disregard means the record shows a "willful inattentiveness to the governing law," and that the arbitrators knew the law and expressly disregarded it.  *Id.*  Here, the clear legal principle that the Panel disregards is that requests for expungement based on the "defamatory in nature" theory are distinct from defamation claims because the former does not account for the truth of the statement.  Likewise, in awarding damages for a defamation claim where the undisputed evidence proves the statements were true, the Panel engaged in misconduct and exceeded its powers.

89.     Pursuant to the FINRA-created concept that certain reporting on a Form U5 may be expunged, a claimant may pursue such remedy in arbitration.  A claimant may seek expungement of information contained in his or her Form U5 if the information is defamatory in nature, misleading, inaccurate, or erroneous. *Moorman*, Case No. 13-3506, 2015 FINRA Arb. LEXIS 238, *6 (March 18, 2015).  A defamatory in nature finding giving rise to expungement, however, does not itself give rise to a claim, cause of action, or basis upon which damages may be awarded.  *See Fifth Third Secs., Inc.*, Case No. 10-4426, 2011 FINRA Arb. LEXIS 1380 (Dec. 28, 2011) (ordering expungement based on the defamatory nature of statements in claimant's Form U5 but denying compensatory damages because the claimant could not satisfy a claim in defamation or demonstrate reckless conduct to destroy the member firm's privilege); *Tocco v. Walter J. Dowd, Inc.*, Index No. 108812/2009, 2009 N.Y. Misc. LEXIS 5129, *23

(N.Y. Sup. Ct. Nov. 20, 2009) (expungement of statements defamatory in nature may be appropriate notwithstanding that such language cannot sustain a defamation claim); *Busch v. Sw. Secs., Inc.*, Case No. CIV-09-661-C, 2009 U.S. Dist. LEXIS 107186, *7-8 (W.D. Okla. Nov. 17, 2009) (confirming arbitration award expunging statements that were defamatory in nature but denying damages on the claim for defamation).   The Panel disregarded the elemental principle that a statement that is defamatory in nature does not necessarily meet the elements of a defamation claim.   Indeed, Roberts did not seek damages based on a claim that the statements in his Form U5 were defamatory in nature – he expressly requested expungement of statements that are defamatory in nature and, separately, damages based on the claim of defamation.   The Panel, in failing to account for the truth of the statements at issue, and in awarding damages on a request for expungement, engaged in misbehavior and exceeded its powers.

90.     A statement that is defamatory in nature does not necessarily rise to the level of a state law defamation claim.   In Colorado, the elements of a cause of action for defamation are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication."   *Stump v. Gates*, 777 F. Supp. 808, 825 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993); *Wedbush Morgan Secs., Inc. v. Kirkpatrick Pettis Capital Mgmt.*, Case No. 06-CV-510, 2007 U.S. Dist. LEXIS 14390, *4-5 (D. Colo. Feb. 28, 2007) (the elements of defamation include making a *false* statement); *Howard v. Las Animas Cnty. Sheriff's Office*, Case No. 09-CV-640, 2010 U.S. Dist. LEXIS 27684, *23-24 (D. Colo. Feb. 23, 2010) (dismissing defamation claim where the plaintiff failed to allege publication of a *false* statement).

Thus, the Panel was first required to find that Roberts prevailed on a state law defamation claim. In other words, the Panel was required to consider the truth or falsity of the statements on Roberts' Form U5, and that clearly was not done. Here, on their face, the statements on Roberts' Form U5 are true and confirmed by Roberts' own testimony at arbitration. Because no claim of defamation can stand where the statements are undisputedly true, the Panel exceeded its powers, engaged in misbehavior and issued an Award in manifest disregard of the law. Janus's statements in responding to FINRA's Form U5 regarding the circumstances of Roberts' employment are true, and there is no evidence to the contrary, whether as part of Roberts' case in chief or Janus's presentation of defenses.

    a. Janus permitted Roberts to resign.

    b. Roberts admitted to claiming a personal expense in an amount less than $150 as a business expense.

    c. With respect to Question 7B, Roberts was under Janus's internal review for wrongful taking of property at the time of his separation of employment.

    d. With respect to Question 7F, Roberts was permitted to resign after an allegation of wrongful taking of the Janus's property.

91. In addition, had the Panel acted within its powers to consider and decide a claim for defamation, it could not have reached the Award it did, because Janus has a qualified privilege to make defamatory statements in Form U5s. Colorado courts and courts across the country have recognized FINRA member firms' qualified privilege in what they report in a Form U5. *Crowe v. State Farm Mut. Auto. Ins. Co.*, Case No. 05-CV-00858, 2007 U.S. Dist. LEXIS 52982, *11 (D. Colo. 2007); *see Goldstein*, 2011 FINRA Arb. LEXIS 1380 at *14 (Dec. 28,

2011) (member firms should be encouraged to make full disclosures without undue fear of liability); *Genberg v. Porter*, Case No. 11-CV-02434 (D. Colo. Aug. 11, 2016) (unpublished) (if the privilege applies, the plaintiff bears the burden of proving the defendant published the communication with actual malice) (applying Nevada law regarding the common interest privilege).   Acting within its powers to consider and decide a claim of defamation, the Panel could not have concluded there had been defamation in light of the privilege, and the only means by which the Panel could have avoided application of the privilege is by exceeding its powers and constructing a novel law/claim/cause of action never before recognized.  Notably, this newly created concept was conveniently and perfectly designed to effect the theory articulated by Arbitrator Brown.

92.   Also, had the Panel exercised attention to the defamation claim, it was required to consider that Janus acted on advice of counsel and, thus, Janus enjoyed an additional and independent qualified immunity.  To establish an advice of counsel defense, a respondent must demonstrate that it (1) completely disclosed the intended action to an attorney; (2) requested the attorney's advice of the legality of the intended action; (3) received counsel's advice that the conduct would be legal; and (4) relied in good faith on the advice.  *James v. Fenske,* Case No. 10-CV-2591, 2012 U.S. Dist. LEXIS 26632, *26-27 (D. Colo. Mar. 1, 2012); *McCrudden*, 2010 FINRA Discip. LEXIS 25, *23 (Oct. 15, 2010).  "Reliance on advice of counsel can provide an additional basis for qualified immunity." *Brudwick v. Minor*, Case No. 05-CV601, 2006 U.S. Dist. LEXIS 51608, *40 (D. Colo. July 13, 2006).  Janus must be afforded qualified immunity in this instance because it relied on the advice of its counsel and met the requirements set out above.  Here, Curzon was engaged to advise Janus's in-house counsel regarding Janus's intended

reporting on Roberts' Form U5.  Janus relied in good faith on Curzon's advice and in order to

fulfill its reporting obligations under FINRA.  Moreover, Curzon was called to testify at the

arbitration and reiterated and confirmed his advice, including testifying that having reviewed the

facts and the Form U5 reporting once again, it was his opinion and continuing advice that the

Form U5 was reported as required by FINRA. The Panel could not have concluded that there had

been defamation in light of the privilege, and the only means by which the Panel could have

avoided application of the privilege is through manifest disregard of the law, misbehavior, and

exceeding its powers.

93.    Furthermore, the Award illustrates a manifest disregard of the law that provides

that an advice of counsel defense, if proven, "provides the nail in the coffin" for a claim based on

willful or wanton conduct.  *Barrera v. Am. Nat'l Prop. Cas. Co.*, Case No. 12-CV-00413, 2012

U.S. Dist. LEXIS 178656, *21 (D. Colo. Nov. 15, 2012) (good faith reliance upon the advice of

counsel is a defense against an award of punitive damages).  Here, Janus's good faith reliance on

advice of counsel, which was reiterated by Curzon at the arbitration hearing, negates any

allegations of bad faith or willful or wanton conduct justifying an award of punitive damages.

94.    In short, a favorable decision for Roberts on the basis of a defamatory in nature

assertion in support of expungement does not support the relief available under and provided by

a state law defamation claim, but that is precisely what the Panel purports to do.  Likewise, in

order to award punitive damages, there had to have been evidence of willful and wanton conduct

and analysis of that evidence under the law set forth above.  Where Roberts' then-counsel

participated in the drafting of his Form U5 and consented to its content and publication and

where application of the law set forth above unavoidably and dispositively renders any

defamation claim without merit, it is clear that the Award was issued in manifest disregard of the law, and that the Panel engaged in misbehavior and exceeded its powers.

***Public Policy***

95.     This Court must vacate the Award because it is contrary to public policy.   An arbitration award may be vacated if the award is contrary to public policy.   *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001).   Disclosure of truthful information on the Form U5 is mandatory in order to maintain the integrity of the securities industry's public disclosure system and FINRA's and other regulatory authorities' investigatory efforts.   FINRA, through its alliance with the Securities and Exchange Commission, has set forth very clearly, including through the form and substance of the Form U5 itself, a clear public policy that the circumstances of a registered representative's separation of employment should be reported truthfully and accurately.   FINRA member firms should be encouraged to make full disclosures about the circumstances of an employee's separation of employment without undue fear of liability.   Firms must file accurate and complete Form U5s because the reported information is used by the public in making informed employment and investment decisions.

96.     FINRA – as authorized under the Securities Exchange Act of 1934 – and not Janus, has decided that the information required to be completed in the Form U5, namely Sections 3 and 7, is important to disclose in order to protect the public.   Moreover, FINRA, not Janus, has decided to require member firms to disclose information in the Form U5 regardless of the materiality of the allegation or infraction or the dollar amount at issue.   FINRA, the author of the very language to which Roberts objects, could not have intended to annihilate the very public policy it espouses.   Affirmative answers to Sections 7B and 7F do not implicate wrongful

conduct – they implicate an allegation of wrongful conduct. An affirmative answer to these questions states no facts other than an allegation has been made or an employer investigated wrongful conduct, and the statement of those facts is one crafted by FINRA; it is not a statement that can be modified or edited by Janus in any way.  To accept Roberts' argument with respect to his defamation claim, would be to wholly gut the public policy at issue, because any affirmative answer to Section 7B or 7F would subject a member firm, reporting as FINRA requires, to inevitable litigation in every circumstance.

### *Misbehavior in the Proceedings by Which the Rights of Janus Were Prejudiced*

97.     The Award entered against Janus should be vacated under Section 10(a)(2) of the FAA because "there was misbehavior by which the rights of [Janus] have been prejudiced."  9 U.S.C. § 10(a)(2).  To satisfy the applicable standard, a party challenging an arbitration award need not show actual bias on the part of an arbitrator. *See Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968) (arbitrators, like judges, "not only must be unbiased but also must avoid even the appearance of bias"); *Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Ltd. P'ship*, 25 Fed. Appx. 738, 743 (10th Cir. 2001) (a fundamentally fair hearing requires that the arbitrators are not infected with bias).  Arbitrator Brown's statements are literally statements of prejudice in the matter and they amply demonstrate that Janus's right to due process were trampled upon.

98.     On the facts here, where Arbitrator Brown, purportedly on behalf of the Panel as a whole, engaged in behavior patently prejudicing the rights of Janus in the proceedings, vacatur is required.  The issue in this case was whether Janus's statements on Roberts' Form U5 were accurate and in conformance with FINRA's mandatory reporting requirements.  Arbitrator

Brown stated, purportedly on behalf of the entire Panel, that she believed Janus had "distorted" Roberts' Form U5 in the middle of the hearing.  Furthermore, Arbitrator Brown stated that the statements in Roberts' Form U5 were "not as correct as [the Panel] feel[s] it should be."  In issuing the Award, the Panel fashioned a novel and baseless theory that perfectly accommodates Arbitrator Brown's clearly articulated quest to punish Janus for its truthful responses to FINRA's queries.  Arbitrator Brown's statements and the Panel's fashioning of an Award not based in any law or precedent, but in furtherance of Arbitrator Brown's distaste for FINRA's text and queries, and her view that Janus should have parsed the queries to avoid full disclosure of the truth, are misbehaviors by which the rights of Janus were prejudiced.  Therefore, this Court must vacate the Award.

## CLAIMS FOR RELIEF

WHEREFORE, Janus respectfully requests that this Court enter judgment in its favor and against Roberts and award the following relief as allowed by law:

a.  Enter judgment vacating the Arbitration Award;

b.  Award Janus its reasonable attorney fees and costs;

c.  Award any other relief that the Court deems just and appropriate.

Submitted this 23rd day of August 2016.      SHERMAN & HOWARD L.L.C.

*/s/ Emily F. Keimig*
Emily F. Keimig
Joseph H. Hunt
633 17th St., Suite 3000
Denver, CO  80202
Phone: (303) 297-2900
Fax: (303) 299-0940
ekeimig@shermanhoward.com
jhunt@shermanhoward.com

*Attorneys for Petitioner*